Good morning, Your Honors. I think it's still morning. Okay. Lost track there. Good morning. May it please the Court. My name is Jillian Harrington, and I was assigned by this Court to represent Defendant Appellant Janovek Rahmankulov on this direct appeal. I did not represent Appellant in the District Court below. As Your Honors are, of course, aware, we raised three issues in this Appellant's brief. The first issue is whether the District Court's bank fraud instruction, which erroneously included elements of both subsections 1 and 2 of 18 U.S.C. 1344, constructively amended count 3 of the indictment. The second issue is whether Mr. Rahmankulov was denied his constitutional right to the effective assistance of trial counsel as a result of his attorney's blistering attacks on the government's attorneys during his closing argument and his failure to do anything about what we discussed in point 1, which is the District Court's amendment. And the third and final issue addresses some of the lost decisions made by the District Court with regard to sentencing and calculating the sentencing guidelines. I'd like to begin with count 1 that we, I'm sorry, point 1 that we raised with regard to count 3 of the indictment, which charged bank fraud under 18 U.S.C. 1344. The bank fraud statute has two separate and distinct subsections, which the United States Supreme Court has specifically ruled makes out two separate and distinct crimes. In Loughran v. United States, the Supreme Court plainly stated in no uncertain terms that, quote, 1344's two clauses have separate numbers, line breaks before, between, and after them, and equivalent indentation, thus placing the clauses visually on equal footing and indicating that they have separate meanings. The first subsection Can someone be charged with both subsections? I'm sorry? Can someone be charged with violating the law under both subsections in the same, in other words, charged in the conjunctive? I don't see why not. And if that were the case, could it be proven in the disjunctive, as long as the jury was instructed that it would have to find, beyond a reasonable doubt, and unanimously, a violation under either one way or the second way? But if there are two separate and distinct crimes, which we know that they are, that I would believe, I believe that they could be the same crime, just violated in two ways, right? You can violate, you can engage in bank fraud, as you pointed out, in two distinct ways. And someone could be charged with engaging in bank fraud by both means, both ways, correct? If the course of conduct played that out, that there were two. If the facts supported it. Yes. And that would be charging in the conjunctive, right? Charging both provisions, both ways of violating the law. And then would it be an error, hypothetically speaking, if the jury were instructed that in order to find someone guilty, they would have to find that they violated, engaged in the conduct under both, but would have to find one of them unanimously. At least one unanimously. If I'm following Your Honor's hypothetical, I believe at that point, they would technically be two separate counts, would they not? Because they'd be charging two, although it might be one grand course of conduct, there are separate elements. Does it have to be two counts or can it be a single count? Because if someone is, if a jury returns a verdict of conviction under both, it's not two crimes, it's a single crime and they have to be merged into a single count of conviction, right? I suppose yes, as long as that was made clear to the jury and the instructions that they could choose one or the other, or I guess technically they could find both, one and the other. But here we, I hate to say this when a hypothetical is proposed, but that's not what we have here. What we have here is a situation where the government made the choice to mimic the language of subsection two. But does the indictment cover only subsection two or does it cover subsection one as well? You mean the, like the two-wit clause appears to really mimic the language of subsection two? No, I understand that the language covers subsection two clearly, but does it omit subsection one or do they include subsection one as well because it doesn't delineate? Right. I mean, the government chose to, at the end of that paragraph of count one, I'm sorry, of count three, to only say 18 U.S.C. 1344 and section two, which is separate, but not, it does not delineate either subsection one or subsection two. Right. They, that's what I'm asking. Did they charge it in the conjunctive? And I don't want to hog all your time, but do you concede that they charged it, charged both, at least as it reads? I would not concede that, Your Honor, because although they only put that broad subsection and chose to omit the sub, whether it was subsection one or two, in reading the count, which is really what is supposed to alert the defendant, the Constitution guarantees this, the federal rules guarantee this, that, I'm sorry, I don't mean to interrupt. No, no, no. I think, and I'm sorry, I'm cutting you off because I realize I have so many questions and I don't want to hog your time. I'm here for it. Bring them on. I want to refer to our presider. But I'll just ask this one more question, and I know you weren't trial counsel below, but there was no bill of particulars filed. Was there asking is it subsection one or two or both? Not that I'm aware of. I would defer to the government's counsel on that, not that I'm aware of. But if you have any more questions on that issue, I'm here for it. Okay. So I think we covered probably a lot of what I was planning to say. And I would just encourage your honors to, you know, in our brief, we have the full statute, which includes subsection one and two. It's pretty short. And then the indictment. And if you compare the two, it should be really obvious that what the government was intending was to charge the subsection two and not the subsection one. And in presenting it in that way, again, they made a choice. And they should have been forced to live with that choice. And — And what is the — assuming that we were to conclude that that was some kind of error, what would be the harm from that? How does this get over the harmless error hump? Well, I mean, the whole — first of all, a constructive amendment isn't subject to harmless error analysis. But a constructive amendment occurs when either the proof at trial or the district court's instructions to the jury alter an essential element of the charge so that we can't be certain whether the defendant was convicted of conduct that was the subject of the grand jury's actual indictment. And an indictment cannot be changed. And so why didn't you — like, just to follow up on that. Yeah. I guess, how — what is the uncertainty that's created here? I mean, the facts of this case and the way that it was charged and the way — the evidence that came in front of the jury, what is the — what is out there to suggest that, oh, they might have convicted him of subsection one and not two? That is exactly what we're arguing — what we believe. What is it about the circumstances of this case that suggests that? Does the evidence actually support that they could have thought, oh, this is subsection one, he's being accused of defrauding the institution? Is that the subsection one's distinction? It absolutely could have. I mean, if we look at the accusations that these checks were deposited and whether the bank may have lost money as a result of that because the checks were cast in a way that the banks could have lost money, there are different ways to look at it. But the point being, at the end of the day, what's important is that the jury may have convicted Mr. Rachmaninoff of a charge that was not presented to the grand jury. So whether or not it may have been borne out by the people's — by the government's evidence really is not relevant in this case because prejudice is presumed in a case of — Is it presumed even on plain error review? Because this is not — are you saying this is not subject to plain error review either? It is subject to plain error review because the defendant's attorney did not — did not bring this to the Court's attention, which, of course, is the subject of point two of our brief. Right. Is it — All right. Well, go ahead and move on to that. Is his failure to do that. But I hope that I responded to the Court's question about whether or not it makes a difference. It does. And it shouldn't be harmless because prejudice is presumed. If I could just briefly address point two. I know that I'm over my time already, I think. No, you have a minute to — Yes, just about our ineffective assistance of counsel claim because there's a second part to this. Of course, there's the first part — the second part that we did, which is connected to point one. But the other part is defense counsel's conduct during his summation. And, of course, the government is in an untenable position because counsel was the subject of that vitriol and is now here to defend that. But, you know, as appellate lawyers and as judges, of course, we are stuck with the cold record. You know, we are reading these transcripts, trying to figure out what actually happened in court. And sometimes it's hard to get the tone of what happened in the courtroom. I wasn't there. I think we got the tone. We got the tone. That's exactly where I was going. In this case, the tone was crystal clear. All you have to do is look at some of the comments. I mean, he — not even paraphrasing — he called the prosecutors the lying government, said that their actions were pathetic and disgusting. He told the jury that they are lying to you. They even lie to you about facts that we know happened. They were unethical. It just goes on and on. And we have, I believe, 10 or maybe even more instances of this. There's no excuse for this. There's no conceivable defense strategy that could have justified calling the prosecutors lying. And, of course, as defense attorneys, we can attack the credibility of witnesses. We can attack the government's evidence. We can attack the theory of the government's case. Those are all inbounds, to use a sports reference. But calling them unethical liars who suborn perjury has to be out of bounds. And I think that there's a clear argument that what defense counsel did here in attacking the prosecutors made him look — I can't even think of the right word in the moment — but — and that that was imputed to the defendant and made the jury look at him through this lens. I know that I'm over my time, so I will see you again in a few minutes. Yes. Thank you. Good morning. May it please the Court. My name is Cecilia Vogel. I'm an assisted United States attorney in the Southern District of New York. I represented the United States in the District Court, and I represent the United States on this appeal. The Court should affirm the defendant's convictions and the sentence in this case. The indictment was not constructively amended. The defendant, Romankolov, received notice of the core criminality charged in the bank fraud count, which included both subsection 1 and 2 of bank fraud, based on the language in the indictment, including the Twitt clause. The evidence presented at trial matched the allegations in the indictment, and the Court properly instructed the jury on both theories of bank fraud consistent with both the indictment and the proof at trial. So there's simply no constructive amendment here. Second, neither defense counsel's accusations regarding the integrity of the prosecutors during summation nor counsel's adoption of the jury charge constitute ineffective assistance of counsel. To be clear, we are not asking the Court to condone defense counsel's comments during summation, but the question is whether he was constitutionally effective in his summation as a whole, and the answer is yes. And in particular here, the defendant cannot show any prejudice as a result of the defendant's, excuse me, counsel's statements during summation or based on the adoption, affirmative adoption of the bank fraud charge. And lastly, Judge Abrams did not err in calculating the loss amount in determining the guidelines, and even if she did, she could not have been clearer that she would have imposed the same sentence regardless of these guidelines issues based on a thorough analysis of Section 3553A and all those factors. And so for all of these reasons, the Court should both affirm the convictions and affirm the sentence. Let me ask you about the summation, the IAC argument. So we didn't get a full transcript as part of the record, but it is available. And after defense counsel's summation and the jury's excused, the judge confronts him, right, about this on the record and says, counsel, what was that all about? You know, that was way out of line. And there's some back and forth, and I think maybe it had been a brief recess, but eventually, I think later that day, counsel sort of apologizes and says, I got hot, judge. I'm sorry I got worked up, right? That's my recollection of the, I mean, you were there. You were probably a little worked up, too. But that's right, right? He apologized and sort of says, look, I got overly emotional. I don't know if he used the words overly emotional, but he says something like, I got hot under the collar. He does make an apology at some point. But he also attributes it, and again, I apologize. That piece of the transcript wasn't in the appendix, and I don't have it in front of me. But he says something like, you know, he doesn't say, I apologize for making the strategic decision to attack the prosecutor. My point is that one of the reasons we don't consider ineffective assistance claims on direct appeal a lot of the time is that we think more needs to be developed, and we need to give defense counsel a chance to respond and say, look, here's why I did not put that witness on the stand, or here's why I did this. I think the remainder of the transcriptage, again, we're able to look at, even though it's not in the appendix, suggests very strongly, if not sort of definitively, that this was not a strategic decision. This wasn't, I can picture a case where you get to the end, and for some reason the defense lawyer thinks, this is so bad that I am going to just blow it up, and this is my last, the only thing I can think of is to go on the attack. Okay. But the way he apologizes, he says, this was, he effectively says, the undertone is, this is not a strategic decision. I lost my head. Sorry. And so I'm wondering, is this the kind of ineffective assistance claim that we can and should at least consider on direct appeal, even though we normally don't do that? So I think here the court actually can deny the ineffective assistance claim based on the record before it, and that's really based on the prejudice prong. As you know, Strickland has two independent prongs. One is whether it's objectively reasonable, which is what you are discussing. How do we know, let's assume for the sake of argument that it wasn't objectively reasonable, but how do we know there was no, how do we calculate the prejudice when the jury may respond emotionally to that kind of behavior? Well, so I think there's two things here. One, which is an important factor the court always looks at on the prejudice prong is the weight of the evidence that was presented, and it was truly overwhelming in this case. There were almost 30 witnesses that testified, including about six witnesses who were either signed up cooperators or immunized witnesses who had direct knowledge of the defendant's conduct. There was a bank video of the defendant withdrawing the funds from the hacks from his own company's testimony from a bank investigator that he had, the defendant had explicitly lied about the transaction. So no matter how bad the summation was, it was so, there was so much evidence that it can't, it can't overcome that. Yes, and that is a reasonable and allowable basis for this court to deny the ineffective assistance claim. It has in many cases denied ineffective assistance claims based on the overwhelming evidence alone. And as I said, the two prongs, subjective reasonableness and prejudice are independent of each other. But in addition, it truly is a big speculative leap in this case to conclude that it was substantially, and I'll pull up the language, because it's not just that there may have been a chance the jury was affected. The defendant has to show there was a reasonable probability, but for counsel's statements in closing, Ramon Collab would have been acquitted. It has to be that the different result was, the likelihood of a different result was substantial, not just conceivable. So you'd have to say something like, yeah, my client's guilty, but you'd have to be pretty bad for, I guess what you're saying is for a summation ineffectiveness to create prejudice in this case. I can't even picture what it would be. It would have to be extreme. This is extreme. I don't know what it would be. It's almost impossible is what you're saying, or maybe is impossible on this record. I think given the overwhelming evidence, yes. Even if defense counsel had said you should convict my client, I think given the overwhelming evidence. That would have just been an extra straw on top of the pile of evidence. Given the overwhelming evidence, this Court has to deny the ineffective assistance claim. And in addition, as I was saying, it is very speculative here to then, the focus of the attack of defense counsel was on the prosecutors, on the prosecution. It was to discredit the prosecutors. The point of these statements was to lessen the credibility, to create bias against the prosecutors, to then turn around and say, actually, the defendant is a big speculative leap. And you have to take the whole thing in context. Defense counsel made other arguments in summations. It wasn't his only argument. The government did not respond. We did not object. We did not highlight this in our rebuttal. We had half a sentence in response. The judge made a very standard instruction, again, focused on the fact that bias may have been against the government. The government was not on trial. That was the instruction. And even if the jury found counsel's behavior distasteful, it's speculative to think they would hold it against his client as opposed to against counsel. I mean, it's not uncommon for jurors to express disdain, having been a presiding judge at the trial level, to counsel and still rule in their client's favor. So it's not an automatic that if you don't like a particular counsel on one side, that can cut both ways. They can feel sorry for him, and it could be a benefit, or maybe they associate them together. But it's not an automatic. That's correct. In my experience, I've seen jurors dislike intensely counsel on either side, government or defense, and not necessarily hold it against the particular party they're representing. That's correct. And that dovetails to the other point we raised in our brief, which is the jury was instructed multiple times to decide the case based on the evidence without prejudice or bias. The beginning of the case, before summation, after summation. And so we have to presume here that the jury is just throwing out those instructions. And it's the opposite. We presume that the jury follows the instructions. So for all of these reasons, this Court can deny the ineffective assistance claim based on the current record. Unless the Court has other questions, I will rest on the brief. Thank you. Thank you. So I'll just take another second of Your Honor's time. First, I want to apologize for not including those the comments that Your Honor pointed out that were omitted from the appendix. I'd be happy to. I have them. I just didn't have them in front of me, so I couldn't quote them directly. That was my apology. Okay. No, no. But I'd be happy to submit them. We have them. As an individual, you have them. Okay. Fine. I just wanted to say one additional thing, was that this was not a slip of the tongue by defense counsel. This was his plan. His plan was to attack the government's counsel. Wait. Doesn't that undermine the IAC? I mean, normally then, if it's a strategic decision to act that way, we defer to defense counsel's strategic decision. Just because it was a plan doesn't mean it was a viable strategy. Well, it doesn't have to be viable to be constitutionally, to meet the Strickland standard. I mean, I had a judge once tell my client, you don't have to like her, but she's a lawyer. So they don't have to be good lawyers. They don't have to make good choices. So if you're saying that you believe this is strategic, I thought that's what you're just saying. This was his plan. No. What I meant was that this was woven through his argument. And what I mean by that is this wasn't just one little thing that kind of slipped out, like an oops. You know, like, oh my God, what I meant to say was that this was the cooperating witness. He was attacking the government. And we can't do that. That goes against all of our rules of decorum. We are officers of the court. He should know better. We all know better. And that may be right, and maybe the court could have referred him. But it sounds like, as Judge Merriam just pointed out, when you make that argument to us, it sounds like you are saying when he wrote out his summation or he practiced his summation in front of the mirror, he intended to make these precise statements as part of a strategy. And then if that's the case, maybe the strategy was a bad one, but that doesn't make it, you know, it cuts against the ineffective assistant. I don't know that it was written out. I don't know that he practiced it. I don't know. I would like to think not, given the outcome. And to say, to assume that Mr. Rachmaninoff was not prejudiced by it, I think is short-sighted. And to say that it requires speculation doesn't, don't most prejudice determinations, or not most, but often, prejudice determinations require speculation. They require us to try to imagine all of the scenarios and figure out what was in the minds of the jurors. And just the final on this is whether or not it should be the subject of a 2255 versus direct appeal. This is all on the record. We see the words. We can all see the words that were used by defense counsel. We can clearly see the district court's, Judge Abrams' response to it. And they were pretty harsh. And she was the one who was in the courtroom. She was the one who watching the jurors. She was the one who was watching the spectators and what was going on. So I think we should take the district court's word for it that this created a situation that brought prejudice to Mr. Rachmaninoff. And as a result, we would urge the court to find that it was ineffective assistance of counsel. Thank you very much. If your honors have no further questions, we'll rely on our brief. Thank you. Thank you very much. Thank you to both of you. We'll take this case under advisement as well.